[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, State of Connecticut Commissioner of Health Services, seeks to have the defendant, Youth Challenge of Greater Hartford, Inc. held in contempt for continuing to operate two unlicensed substance abuse treatment facilities known as Youth Challenge Girls' Home (hereinafter Girls' Home) in Hartford, and Youth Challenge Ranch (hereinafter Ranch) in Moosup, in violation of this court's permanent in junction.
The background of this court is as follows: After extensive hearing, this court, per Judge Mary Hennessey, CT Page 7434 found that the Girls' Home is a drug treatment facility and the Ranch is a drug and alcohol treat facility, and as such, were required by 19a-491 (a) of the Conn. Gen. Stats. to be licensed. Accordingly, on December 9, 1986 the court issued the following injunction:
 1. The defendants are enjoined from operating any unlicensed facilities providing treatment to drug and/or alcohol dependent persons unless, and until, they obtain a license from the Department of Health Services.
 2. The defendants are to immediately terminate detoxification of persons from either drugs or alcohol at any facility not licensed to provide detoxification.
 3. The defendants are to immediately terminate dispensing and/or administering medications to residents at any unlicensed facility.'
 4. The defendants are to cease holding themselves out to the public as providing treatment for drug and/or alcohol abusive persons at any unlicensed facility.
 5. The State Department of Health Services is to have access to the Youth Challenge Ranch and the Youth Challenge Girls' Home for a period of one year to verify compliance with the injunction.
Defendant appealed that order to the Supreme Court, which, in an opinion which recited the underlying facts found by the trial court, affirmed on the grounds that defendant failed to provide an adequate appellate record. Commissioner v. Youth Challenge Greater Hartford, Inc., 206 Conn. 316 (1988).
On November 28, 1988 the Commissioner filed this motion for contempt. This court bifurcated the proceeding, hearing first the issue of the defendant's alleged violation of the injunction in not allowing the Department of Health Services inspectors access to defendant's facilities. This court found the defendant to be in contempt for that violation and fined it $1,000. On appeal by the defendant, the Appellate Court affirmed at 20 Conn. App. 806 (1989).
Before this court at this time is the plaintiff's motion for contempt for defendant's alleged violation of the balance of the provisions of the injunction.
A threshold issue is the plaintiff's burden of proof. CT Page 7435 The defendant asserts that this is a criminal contempt proceeding which requires the defendant to prove its claim of violation of the injunction beyond a reasonable doubt. This court disagrees. The penalty for contempt here being sought is not punitive, i.e., imprisonment for a definite term or a fine for a certain sum of money. Rather, it is remedial, in that the commitment or fine will be imposed until there is obedience to the court's order. Board of Education v. Shelton Educational Ass'n; 173 Conn. 81, 86 (1977); McTigue v. New London Education Assn., 164 Conn. 348, 354 (1973). Thus, plaintiff's burden of proof is the usual civil standard of a fair preponderance of the evidence.
The law is that "a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus became a retrial of the original controversy." Cologne v. Westfarms Associates,197 Conn. 141, 148 (1985), quoting Maggio v. Zeitz, 333 U.S. 56,69 (1948). Issues that were raised or that could have been raised at the injunction hearing are res judicata with respect to the same parties at a later contempt hearing. United States v. Rylander, 460 U.S. 752, 757 (1983); United States v. Secor, 476 F.2d 766 (2d Cir., 1973). Similarly, a contempt proceeding cannot be used to challenge the propriety of the evidence upon which an injunction was based. Local 28 of Sheet Metal Workers v. E.E.O.C., 478 U.S. 421,441, n. 21 (1986).
The court in 1986 found that the Girls' Home was a drug treatment facility and the Ranch a drug and alcohol treatment facility, within the meaning of 19a-490 (i) and both were operating without a license as required a-491(a). The evidence in this contempt proceeding was that both facilities were managed and controlled by the defendant corporation, Youth Challenger of Greater Hartford, Inc. The evidence in this contempt proceeding was also that neither the Ranch nor the Girls' Home has changed their operations in any regard since the 1986 in junction. One of defendant's directors testified that no staff members or residents were discharged at the Ranch or Girls' Home after the injunction and "everything is the same, classes, the major operations or the way of homes working on a daily basis have been the same."
A supervisor in the Department of Health Services testified that the director of the Girls' Home told her the services provided at the Girls' Home had not changed in the last two years. The director of the Ranch testified as follows: CT Page 7436
 Court: Is there any change in the operation of the Ranch from 1986 until now?
 A: No the only change that may be a change was when I went there we changed the name.
Independent of that concession by defendant employees, the evidence clearly indicates the Girls' Home and the Ranch have continued to treat drug-dependent people without being licensed.
Department of Health Services regulation 19a-495-570 (a)(37) defines "substance-dependent persons" as "individuals who are physically or psychologically reliant upon alcohol or a drug (1) as a result of substance abuse . . . ." Almost all the residents of the Girls' Home have histories of drug and/or alcohol abuse problems. Dr. Anthony Ardolini. acting medical director of the Girls' Home, testified that the residents of the Home are psychologically dependent on drugs, even though at the time of admission they may not have been using drugs or having withdrawal symptoms. The St. Francis Hospital medical record of one Girls' Home resident, dated February 5, 1987 reads: "24 year old [girl] has been to several alcohol rehabilitation programs in past, returns to Youth Challenge in Hartford . . . . Last P/E [physical exam] 3/86 and since has been in and out of rehab programs intermittently abusing alcohol and using M.J. and cocaine." The Hartford Department of Social Services' report dated January 13, 1989 on another Girls' Home resident reads, "Client in Youth Challenge for drug problems. Client arrived from N.J. 11/18/88 to enter Youth Challenge."
Likewise, almost all the residents of the Ranch have substance abuse problems. The Ranch is the second phase of a program which begins at the Youth Challenge Mens' Home in Hartford which is a licensed substance abuse facility. The staff of the Mens' Home and Ranch mutually decide when a resident is ready to move to the. Ranch to continue his rehabilitation.
Department of Health Services regulation 19a-495-570 (a)(39) defines substance abuse "treatment" as "the engaging of persons in a particular plan of action, the aim of which is to arrest, reverse, ameliorate substance abuse." Regulation 19a-495
570(a)(40) defines "Treatment services" as "those activities which are designed and developed to arrest, reverse or ameliorate the client's disorder or problem."
Both the Girls' Home and the Ranch provide highly structured, supportive living situations designed to deal with CT Page 7437 residents' drug dependency problems. The rules of both restrict residents leaving the facilities without staff members, require mail to be opened in the presence of staff, and limit the amount of money a resident may have on his/her person. Dr. Ardolini stated the Girls' Home residents "are allotted an alternative, comprehensive lifestyle that allows them to remain drug free. That fits my definition of a drug rehabilitation program."
Witnesses testified that Ranch is a continuation of the drug rehabilitation program at the licensed Mens' Home. The heavy emphasis on religious study at the Ranch is designed to help residents control drug problems. As explained by Dr. Ardolini, "these individuals [residents] are very addictive individuals. There is something about their psychological make-up, I believe, that makes them that way. This [the Ranch] happens to be a very religious organization . . . but they get very much involved — no[t] in a negative way, but addicted — to religious activities of the group, and that offers them a very plausible, certainly a safer, environment where they could go ahead and become more productive members of society."
Thus, this court concludes that the defendant has continued to operate the Girls' Home and the Ranch as unlicensed facilities providing treatment to drug and/or alcohol-dependent persons in violation of paragraph 1. of the injunction. This court finds the plaintiff failed to adduce any evidence that defendant violated the other paragraphs of the injunction.
The court finds the defendant in contempt and orders as follows:
1) The defendant shall be fined $200.00 per day to begin 30 days after the Court's issuance of this contempt order unless and until the defendant has either (a) discharged all residents from the Girls' Home and Ranch by transferring them to a licensed substance abuse treatment facility or otherwise discharging them after giving them information about licensed substance abuse treatment facilities in their community, or (b) applied for a license from the Department of Health Services for the Ranch and the Girls' Home. If the applicant applies for a license in a timely fashion but has not received a license for a facility within 4 months of the application, the defendant must comply with the discharge provisions of this order within 30 days of the passage of the 4-month period. The defendant may request a written extension of time from the Department if it is in the process of applying for a license and it appears that a decision on the application will not be CT Page 7438 made within the 4 months. If the Department grants the extension of time, the applicant must meet the new deadline or implement the discharge provisions of this order within 30 days
2) If the defendant chooses or becomes subject to the discharge of residents provision in 1) above, then the defendant must comply with the following additional provisions to ensure that the facilities do not revert back to substance abuse treatment facilities:
(a) The defendant shall not allow anyone to reside at the Ranch or Girls' Home who has had a history of substance abuse within one year prior to admission. This means that anyone applying to reside at the Ranch or Girls' Home who was abusing drugs or alcohol or who was in a substance abuse treatment facility within the preceding twelve-month period cannot be admitted. The defendant must verify this by questioning the individuals, the referring person, if known and by checking the person's medical records. The defendant shall maintain documentation of this verification for each person it admits to the Ranch or Girls' Home. This documentation shall be made available to Department inspectors upon request.
(b) The defendant shall report to the Department on a bi-monthly basis for the first two years following this order and annually thereafter and provide the Department with the following:
A) the names and dates of birth of any new residents; their date of admission and length of stay;
B) whether the resident is receiving any money and/or reimbursement for costs or is being provided with any services from any state, city or federal agency and the reason such services/money/reimbursement is being provided.
3) The Department shall have access to the Ranch and the Girls' Home for a period of two years from this order to verify compliance with the injunction and with this order. Access is to consist of unannounced visits by Department staff, Department staff are to be allowed to tour the facility, review any resident records, and talk to staff and residents.
ROBERT SATTER, J.